**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KAREN MONTGOMERY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **ACTING COMMISSIONER OF** | ) |
| **SOCIAL SECURITY,** | ) |
| | ) |
| **Defendant.** | ) |

**Civil Action No. 14-909
Judge Maurice B. Cohill, Jr.**

**OPINION**

### *I. Introduction*

Pending before this Court is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying the claims of Karen Montgomery ("Plaintiff" or "Claimant") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 1381 et. seq. (2012). Plaintiff argues that the decision of the Administrative Law Judge ("ALJ") should be reversed or remanded because the ALJ failed to call a Vocational Expert ("VE") to meet her "step 5 burden" of showing that there is other work in the economy for Plaintiff despite her non-exertional limitations. In addition, Plaintiff claims that her limitations in concentration, persistence, and pace were not incorporated into the ALJ's Residual Functional Capacity ("RFC") assessment and her Global Assessment of Functioning ("GAF") scores were not taken into consideration. For these reasons Plaintiff asserts that the ALJ's decision to deny benefits was not supported by substantial evidence as required by 42 U.S.C. § 405(g) [See generally ECF No. 12].

1

To the contrary, Defendant argues that the ALJ reviewed all of the evidence to make a proper RFC determination and that despite the functional limitations identified by the ALJ, Plaintiff is able to perform at least a range of simple repetitive tasks and that abundant jobs were available in the national economy for Plaintiff. Furthermore, the Defendant asserts that the ALJ is permitted to rely on Social Security Rulings to confirm that the Medical-Vocational Guidelines ("the Grids") are a proper framework from which to determine the jobs available to Plaintiff in the national economy. Therefore, the ALJ's decision should be affirmed. The parties have filed cross motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

For the reasons stated below, the Court will deny the Plaintiff's Motion for Summary Judgment. In turn, the Court will grant the Defendant's Motion for Summary Judgment.

## II. Procedural History

On October 4, 2010, Plaintiff filed an application for SSI alleging disability beginning December 10, 2009 (R. at 21). The claim was initially denied on February 14, 2011 (R. at 21). On March 21, 2011, Claimant filed a written request for a hearing (R. at 21). A hearing was held before an Administrative Law Judge on August 15, 2012 (R. at 21). Francis N. Kinley, an impartial Vocational Expert, also appeared during the hearing (R. at 21). Although informed of the right to representation, the Claimant chose to appear and testify without the assistance of an attorney or other representative (R. at 21).

On February 6, 2013, the ALJ, Joanna Papazekos, determined that Plaintiff was not disabled under Sections 1614(a)(3)(A) of the Social Security Act (R. at 32). The ALJ stated that, "Based upon a thorough review of the evidence of record and the claimant's testimony, the undersigned finds that, pursuant to SSR 85-15, the claimant retains substantial abilities to

2

perform unskilled work. This work is generally available in sufficiently large numbers in the national economy as the claimant retains the mental capacity necessary to meet the intellectual and emotional demands of unskilled, competitive, remunerative work on a sustained basis." (R. at 31).

On April 1, 2013 Plaintiff submitted a timely written request for review by the Appeals Council (R. at 16-17). On May 5, 2014 the Appeals Council denied Plaintiff's request for review thus making the Commissioner's decision final under 42 U.S.C. § 405(g) (R. at 1-6).

## III. *Medical History*

There are various health notes from Birmingham Health Care on the record but none of the notes seem to address those medical issues under review for disability in this case. The ALJ determined the Plaintiff to have severe impairments of Alcohol Dependence, Cocaine Dependence, and Bipolar Disorder (R. at 23).

January 8, 2011 Plaintiff attended MDSI Physician Services in Utah with her chief complaints were low back pain, osteoarthritis of the knees, and foot pain (R. at 243). A full examination was conducted with mostly normal results. However, the physician noted vision difficulty and knee swelling and affected gait (R.at 244-246). Diagnosis by Michael Lyerly, MD (Neurology) was that Plaintiff has chronic low back pain. However, there did not appear to be any radicular findings on examination. There was evidence of swelling around both knees but Plaintiff still had full range of motion. The Doctor could not find any discernable reason for Plaintiff's foot pain (R. at 247). Despite Plaintiff's allegation of 20/10 pain levels, there was little objective evidence of severe pathology (R. at 248).

A psychiatric review was performed on Plaintiff on January 19, 2011 where Dr. Robert Estock found that her impairments were not severe (R. at 250). He did indicate that Plaintiff was

3

depressed (R. at 253). Plaintiff was reported as having only mild limitations in activities of daily living, social functioning, and difficulty in maintaining concentration, persistence, or pace with no episodes of decompensation (R. at 260). Doctor Estock prescribed Prozak for Plaintiff's depression (R. at 262).

On January 20, 2012 Plaintiff attended UPMC Shadyside Emergency Department with a complaint of Altered Mental Status due to drugs and alcohol (R. at 265). There were no medical issues diagnosed by Dr. Peter H. Adler and she was discharged when she became sober (R. at 266).

May 17, 2012 Plaintiff attended an appointment at Mercy Behavioral Health. At the appointment she complained of stomach pains and headache (R. at 288). She reported alcohol and cocaine use as well as smoking cigarettes (R. at 291-92). Plaintiff also reported withdraw symptoms. During her appointment Plaintiff's mood was depressed and she was irritable at times. She was tearful throughout the assessment (R. at 302). Plaintiff said she was clean for 13 years and was willing to enter drug rehabilitation treatment (R. at 302). Dual recovery intensive outpatient treatment was prescribed for Plaintiff (R. at 303). Present in the record are office treatment records from Mercy Behavioral Health dated May 30, 2012 to December 18, 2012, which include group therapy and one-on-one appointment with a psychiatrist.

On May 30, 2012 Plaintiff entered group therapy treatment with David J. Balbach, MA, LPC (R. at 311). Upon return to treatment Plaintiff's GAF was typically reported at 46 and gradually increasing. Plaintiff was active in the group discussions and reported finding benefits from sharing in the group process (R. at 327). David J. Balbach, MA, LPC a therapist in the adult treatment unit of Pittsburgh Mercy provided a December 4, 2012 letter indicating that

4

Plaintiff was in treatment with him from June 1, 2012 to August 6, 2012 (R. at 282). She was seen for alcohol and cocaine dependence as well as Bipolar Disorder (R. at 282).

On June 18, 2012 Plaintiff had a medication change to Seroquel XR 300 mg OHS for Bipolar Disorder and depression, irritability and sleep. Topamax 100mg BID was prescribed for migraines (R. at 332). On July 2, 2012 Neurontin was prescribed to Plaintiff for anxiety (R. at 344).

On July 20, 2012 the Mercy Behavior Health Progress Note stated Plaintiff was extremely talkative and had trouble waiting her turn and not interrupting others. She joked about drinking at a bar in the coming weekend but then said that she would be dancing (R. at 358). A consistent comment throughout the notes is that Plaintiff needed more "sober supports."

On July 30, 2012 Plaintiff reported constant pain and headaches and her anxiety attacks were getting worse (R. at 368).

Plaintiff completed group therapy and was maintaining sobriety and improved mood. She started a relapse prevention program on August 7, 2012 (R. at 306). Plaintiff's GAF score was 52 at this time of transition.[1]

August 8, 2012 Plaintiff attended her routine psychiatric appointment. She reported being unhappy living in her daughter's hot attic. She said the Seroquel and Topamax were not working and she did not start the Neurontin because she didn't want to take so many medications. She was still unable to sleep sometimes for a week and then would sleep for two days (R. at 378).

---

[1] The GAF scale, devised by the American Psychiatric Association, ranges from zero to one hundred and is used by a clinician to indicate an overall judgment of a person's psychological, social, and occupational functioning. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-R). The greater the number the higher the functioning of the individual.

September 13, 2012 Plaintiff attended her psychiatry appointment and reported attending her group therapy. She said the Tramadol was ineffective for her headaches but she was sleeping better on the Ambien though she had been sleepwalking. Plaintiff's mental status generally good (R. at 400).

October 4, 2012 Plaintiff attended her routine psychiatric appointment where she still complained of sleeplessness and also her recurrent headaches (R. at 418). She also noted family discord (R. at 418). Her mental status was otherwise average (R. at 418). Plaintiff was referred by to Linda Von Bloch, MD because Plaintiff had a very high blood pressure reading (R. at 492). She was told to quit smoking and reduce salt (R. at 493).

On October 23, 2012 Plaintiff returned to Linda Von Bloch and reported constant pain in legs, back, neck and knees as well as stomach pain. She denied headaches, dizziness, nonexertional dyspnea, chest pain or leg swelling. Plaintiff never obtained the prescription for Amlodipine-Benazepril for her blood pressure (R. at 494). Plaintiff's Neurontin was increased (R. at 495).

October 30, 2015 Plaintiff attended her routine psychiatric appointment where she reported her sleep is mildly improved as are her headaches though they persist (R. at 447). Plaintiff had cut down on smoking due to lack of funds and was sad and irritable (R. at 447). Plaintiff appeared to be depressed and unhappy with her living situation (R. at 452-53).

November 23, 2012 Plaintiff attended a follow up appointment and continued to state that she was "hurting constantly." Plaintiff also had hypertension (R. at 501). Her assessment was generalized pain, unspecified essential hypertension, esophageal efflux, chronic airway obstruction, not elsewhere classified, and Bipolar Disorder (R. at 502). The doctor prescribed

6

various medications to address the issues (R. at 502-03). Plaintiff's appointment was otherwise unremarkable.

A November 28, 2012 Report reads "Thoughts organized. Mood has been stable overall. Less depressed. No overt delusions. Behavior controlled. No involuntary movements. No psychomotor retardation or agitations. Speech clear w/o pressure or hesitance. Dressed appropriately. Hygiene good. Eye contact good. Denies hallucinations." (R. at 475). Plaintiff continues to smoke despite being counselled on smoking cessation (R. at 475). Therapist continues to describe Plaintiff as relapse prone (R. at 490).

Throughout Plaintiff's Mental Health therapy, the evaluators note her vulnerability to relapse due to her emotional instability. Evaluators stated that she needed to develop a recovery lifestyle to maintain abstinence (R. at 522).

## *IV. Summary of Testimony*

Plaintiff was born on July 23, 1956 (R. at 30). At the time of the hearing Plaintiff was 54 years old and approximately 5' tall weighing 135 pounds (R. at 44). Plaintiff attended school through the 9th grade and obtained her GED (R. at 47). Plaintiff lacks any history of gainful employment. The ALJ found the Claimant to have the following severe impairments: (1) Alcohol Dependence; (2) Cocaine Dependence; and (3) Bipolar Disorder (R. at 23).

Plaintiff stated that in a typical day she cleans the house, cooks, and washes clothes (R. at 181). However, she also stated that she is in pain all the time and has trouble tying her shoes and getting in and out of the bathtub (R. at 182). Plaintiff stated she can't push a lawnmower or rake and pull weeds (R. at 184). Plaintiff also stated she cannot handle her own finances (R.at 184).

At her hearing, Plaintiff indicated that she was currently being treated by Dr. Kahn, her primary care physician, at the Clinic at Mercy (R. at 51). She had only treated with him for 2-3

7

weeks (R. at 52). However, she had been at the Mercy Clinic for a little over a year. Plaintiff also had recently obtained a Mental Health Doctor, Dr. Garber, of Mercy Behavioral (R. at 52). She started in June with Mercy Behavioral (2 months prior to the hearing). The Plaintiff brought her medications to the hearing and the ALJ read them to the record. Plaintiff was taking Seroquel for Bipolar, gabapentin for schizophrenia, omeprazole for acid reflux. Tramadol for pain, Trazodone and Topamax as a sleep aid, amlodipine for high blood pressure, and an inhaler for emphysema (R. at 57).

The Disability Determination and Transmittal indicates that Plaintiff can occasionally lift or carry 50 pounds, frequently lift or carry 25 pounds, stand or walk with normal breaks for about 6 hours in an 8 hour work day, sit with normal breaks for a total of 6 hours in an 8 hour work day, and she has unlimited push and pull capabilities (R. at 70). The only postural limitation for Plaintiff is that she can never use a ladder, rope or scaffolds (R. at 71). Furthermore, she cannot work with machinery or hazards (R. at 73). Plaintiff was "considered partially credible in that her conditions are somewhat supported by medical evidence and are reasonably expected to result in limitations indicated . ." (R. at 74).

The disability report from the field office listed Plaintiff's medical conditions as restless leg syndrome, osteoarthritis, and no sight in Plaintiff's right eye (R. at 176). Plaintiff said she experiences a lot of pain and is easily upset (R. at 186). Plaintiff listed her most recent jobs as a sorter at a supply company from 2005 to 2008 and as an order taker at a packing company in 2009 (R. at 177). Plaintiff stated that she is fine taking direction from authority and can adapt to changes (R. at 187).

In the disability report on Appeal, Plaintiff stated that her condition has deteriorated. Namely, that her legs, back stomach, hips, and eyes are getting worse and she is in constant pain

8

(R. at 202). Plaintiff reported she struggled with insomnia, acid reflux, headaches and ringing in her head, earaches, and wax (R. at 205). She also reported being diagnosed with schizophrenia (R. at 202). However, she also reported that she has not seen a doctor (R. at 203).

### V. *Standard of Review*

The Congress of the United States provides for judicial review of the Commissioner's denial of a claimant's benefits. See 42 U.S.C. § 405(g)(2012). This Court must determine whether or not there is substantial evidence which supports the findings of the Commissioner. See id. "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). This standard, however, does not permit the court to substitute its own conclusions for that of the fact-finder. See id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706(1)(F) (2012).

### VI. *Discussion*

Under SSA, the term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period

of not less than 12 months ..." 42 U.S.C. §§ 416(i)(l); 423(d)(1)(A); 20 C.F.R. § 404.1505 (2012). A person is unable to engage in substantial activity when:

> [H]e is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....

42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled under SSA, a five-step sequential evaluation process must be applied. See 20 C.F.R. § 404.1520; McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). The evaluation process proceeds as follows: At step one, the Commissioner must determine whether the claimant is engaged in substantial gainful activity for the relevant time periods; if not, the process proceeds to step two. See 20 C.F.R. § 404.1520(a)(4)(i). At step two, the Commissioner must determine whether the claimant has a severe impairment. See id. at § 404.1520(a)(4)(ii). If the Commissioner determines that the claimant has a severe impairment, she must then determine whether that impairment meets or equals the criteria of an impairment listed in 20 C.F.R., part 404, subpart p, Appx. 1. § 404.1520(a)(4)(iii). If the claimant does not have impairment which meets or equals the criteria, at step four the Commissioner must determine whether the claimant's impairment or impairments prevent her from performing her past relevant work. See id. at § 404.1520(a)(4)(iv). If so, the Commissioner must determine, at step five, whether the claimant can perform other work which exists in the national economy, considering her residual functional capacity and age, education and work experience. See id. at § 404.1520(a)(4)(v); see also McCrea, 370 F.3d at 360; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000). In this case, the Commissioner uses the sequential evaluation process and determines at step (5) that the Plaintiff

has not met her burden of proof that she cannot work in some capacity in the national economy. Because the Plaintiff was determined able to perform work that exists in significant numbers in the national economy, she was determined ineligible for benefits by the ALJ (R. at 62).

Plaintiff bears the burden of proving that her RFC or limitations are that which do not allow for any work in the national economy. See Heckler v. Campbell, 461 U.S. 458, 460 (1983); Matthews v. Eldridge, 424 U.S. 319, 336 (1976). Moreover, the ALJ is not required to uncritically accept Plaintiff's complaints. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d Cir. 2011). The ALJ, as fact finder, has the sole responsibility to weigh a claimant's complaints about her symptoms against the record as a whole. See 20 C.F.R. §§ 404.1529(a), 416.929(a).

The record does not contain any medical report of substance that discusses Plaintiff's physical ailments, nor did Plaintiff address her physical claims in her appeal. While we see that the Plaintiff indicates she has pain in her knees, back and feet, there was no medical testing to corroborate or diagnose her complaints. Therefore, we focus our attention to Plaintiff's mental impairments of Bipolar Disorder and drug and alcohol addiction.

The record indicates generally that Plaintiff takes Seroquel for Bipolar Disorder and the condition seems relatively under control. Though Plaintiff has difficulty sleeping and her affect is commonly depressed there is no evidence of record that attributes these symptoms to her Bipolar Disorder. Rather, the overwhelming majority of information on the record is dedicated to Plaintiff's therapy in drug and alcohol rehabilitation and her current stressors, including being homeless. It is generally known that a person may not obtain social security benefits for alcoholism or drug addiction. However, impairment stemming from the addictions may qualify for benefits. In this case we see no impairment that would render Plaintiff disabled.

Plaintiff puts forth two basic arguments for remand in this case: (1) That the ALJ's RFC finding is erroneous; and (2) that law mandates that a vocational expert be used to determine availability of jobs for a plaintiff in the economy.

With regard to Plaintiff's RFC argument, we agree with the Commissioner that considering the evidence of record in its entirety, substantial evidence supports the ALJ's determinations which were reflected in the RFC. The ALJ notes a "somewhat higher degree of limitation in the area of concentration, persistence, and pace . . " than that which was indicated by Dr. Robert Estock. Given that the ALJ places a higher level of limitation in this area we are certain the ALJ afforded proper consideration of this limitation. Further, given the difference of opinion on the record between Dr. Estock and the ALJ, we believe the RFC designation of simple repetitive tasks is appropriate to Plaintiff's particular level of limitation. Each case is unique and simply because the Plaintiff is deemed to have a mental limitation or because another plaintiff may have required a more restrictive RFC does not provide a basis for us to overrule the Commissioner's determination. Remand is not called for in this instance.

We find Plaintiff's argument regarding her GAF ratings equally unpersuasive. Certainly, we took note that in almost all of Plaintiff's therapeutic progress notes a GAF value was assigned, however, we place little emphasis on these ratings as they fluctuated with Plaintiff's addiction recovery. Drug and alcohol addiction are not proper bases for an assignment of disability, therefore, unstable GAF scores that fluctuated with recovery progress are not instructive for our purposes. We believe that the Commissioner's determinations are supported by substantial evidence despite the fact that the ALJ did not discuss the GAF scores.

Plaintiff's strongest argument is that the ALJ erred, pursuant to Acquiescence Ruling 01-1(3) (AR 01-1(3)) and Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000), when she failed to call a

12

vocational expert to meet her step 5 burden [ECF No. 12 at 5]. More specifically, when a VE is called he/she typically offers testimony regarding whether there is appropriate work in the economy for a plaintiff taking into account the plaintiff's limitations. In this case, the ALJ had a VE present at the hearing but allegedly could not utilize the VE because the record was incomplete at the time. Once the ALJ obtained all of Plaintiff's medical records she fashioned a RFC and used vocational guidance contained in the agency's Social Security Rulings to ascertain whether Plaintiff's nonexertional limitations would substantially erode the unskilled occupational base represented in the framework of the Medial-Vocational Guidelines ("the Grids")[ECF No. 16 at 4]. The ALJ's RFC reads:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, repetitive tasks, frequently deal with co-workers, supervisors, and the general public, and can deal with the usual work situations and changes in a routine work setting. (R. at 26-27).

The ALJ further found, based on the Grids and Plaintiff's limitations, there would be a large occupational base of unskilled work available to Plaintiff [ECF No. 16 at 4].

The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels. A finding of 'not disabled' is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines. (R. at 30)

Defendant states the ALJ's approach to the case was acceptable and, in fact, what the Third Circuit instructs [ECF No. 16 at 8]. "[I]f the claimant has 'solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making.' (Tr. 30, citing SSR 85-15)" [ECF No. 16 at 8]. Under Allen v. Barnhart, 417 F.3d 396 (3d Cir. 2005), the ALJ may rely on a Social Security Ruling (like SSR 85-15) to assess whether the occupational base represented in the Grids is substantially eroded, but only if she

13

articulates "how SSR 85-15 is relevant and controlling . . ." Id. at 407. Plaintiff retorts that Allen also states that an ALJ may only rely upon an SSR in lieu of vocational expert testimony if it is "crystal clear that the SSR is probative." Id.

In Allen the case was remanded because the ALJ did not properly explain how SSR 85-15 applied in that case. The court said, "Looking at the ALJ's conclusory reference to SSR 85-15, we cannot determine whether he was relying upon a specific aspect of the Rule in a permissible way, or whether, by contrast, he found certain limitations to exist which would require, under the dictate of the Rule itself, an individualized determination." Id. at 406-07. In the case at hand, Defendant points out that the ALJ made great effort to apply SSR 85-15 to Plaintiff's particular circumstance [See ECF No. 16 at 10-13; R. at 30-31]. In fact, the ALJ noted that Plaintiff retains significant social functioning (R. at 31); Plaintiff was able to "adequately handle stress" (R. at 31); Plaintiff did not exhibit maladaptive behaviors (R. at 31); Plaintiff had no extreme adversities in her vocational profile (R. at 31); and the ALJ described how the Grids properly apply to a person like Plaintiff with "solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis." (R. at 31 citing 85-15).

We believe the ALJ properly reviewed this case and properly utilized the Grids to make a determination regarding Plaintiff's ability to find work available in the economy. Therefore, calling upon a vocation expert in this instance was not required and does not give cause for remand.

## *VII. Conclusion*

For the foregoing reasons, we conclude that the record contains substantial evidence supporting the determination that Plaintiff is not mentally disabled. Plaintiff's Motion for

Summary Judgment [ECF No. 8], is DENIED. Defendant's Motion for Summary Judgment is GRANTED.

An appropriate order will be entered.

Date: _May 4, 2015_

Maurice B. Cohill, Jr.
Senior United States District Court Judge

cc:     counsel of record